## SHOPE BRICK CO., Inc., v. WETHERBEE et al.

District Court, W. D. Louisiana, Shreveport Division. March 7, 1928.

On Rehearing August 24, 1928.

No. 255.

Browne, Browne, Porteous & Myers, of New Orleans, La., for plaintiff.

Thigpen, Herold, Lee & Cousin and Melvin Johnson, all of Shreveport, La., for defendants.

DAWKINS, J. Plaintiff sues upon an alleged agreement for the sale of certain patent rights for the manufacture and sale of waterproof brick in the state of Louisiana, in parishes other than Caddo; the rights within the latter having been previously con-veyed under another contract. It is alleged that a written agreement was entered into in the city of Los Angeles, Cal., which was signed by plaintiff and one of the defendants, G. L. Cline, and contemplated the giving of notes to be signed by both defendants; that the notes were executed by Cline, though never signed by Wetherbee, but that the latter ratified the contract in all respects by making payment of one-fifth of the price of the patent rights. The demand is made upon the basis of the contract stipulations as to amounts and payments and the notes petitioner judicially waives.

The defense is threefold:

(1) That there was never any contract because the minds of the parties never met as to terms, i. e., whether the deferred payments were to be represented by notes bearing 6 per cent. interest, and providing for attorneys' fees, or merely by the obligations of the contract.

(2) That there was a want or failure of consideration because of the alleged invalidity of the patent.

(3) That the agreement was void because of its alleged purpose to unlawfully restrain interstate commerce.

Without going into the evidence in detail, I am of the opinion that the document signed by Shope for his company and by Cline for the defendants was complete in all respects except the approval by Wetherbee of the feature giving notes; that, in view of the previous agreement providing notes, both Shope and Cline were reasonably justified in assuming that Wetherbee would be willing to complete the matter in the same manner, and had no idea that he would raise any objection thereto; that he communicated no objection to plaintiff, although the contract and notes were received in due course of mail after their execution by the other parties in California, on July 22, 1922, until after he had partially executed the contract by paying the first installment thereon of $5,000, less a discount of ten per cent., agreed to by telegrams, on September 6th, and then only made his unwillingness to give notes known through his codefendant, Cline. My view is that both by his silence as well as by his affirmative action, when it was his duty to speak and repudiate the act of Cline, he must be held to have ratified the agreement and that a court of equity should give such judgment as will have the effect of compelling him to do that which in good conscience he should have done under the circumstances. In other words, after remaining silent and wiring plaintiff $4,500 "to cover first pay-

ment on said rights," I do not think he can be heard to say that he was not bound by the contract which Cline had signed, in view of the implied if not specific authorization for making it which had been given in his telegrams sent during the negotiations. The subsequent correspondence between Cline and Shope as to the unwillingness of Wetherbee to give notes, and the insistence thereon by Shope, I do not think could have any effect upon the legal relation of the parties thereafter, unless they mutually agreed to a change. Even if plaintiff had sued for specific performance or to compel Wetherbee to sign the notes, all that could have been done in event of his failure to sign would have been to give judgment for the amount, principal, interest, attorneys' fees, etc., which the notes called for.

As to whether or not defendants received any benefit, it is sufficient to say that this was a contract for the exercise of certain privileges under the monopoly of a patent during its lifetime, which could not be more than 17 years from its date, and since the completion of the agreement defendants have had the exclusive right to the use thereof in the remainder of the state of Louisiana, and for which, if the patents were valid, they were at that time at least willing to pay the sum of $25,000, with the hope of making a profit therefrom, and after having had an opportunity of using them under the other contract for one year.

With respect to the attack upon the validity of the patents, I do not believe that defendants have sustained the burden resting upon them to establish such invalidity. Neither have they shown any eviction or use of such rights by others within the territory covered by their contract. I think there is a distinction between the terms "pressure" and "agitate" as used and applied in the manufacture of brick and tile. The main idea in plaintiff's process is in the suspending in solution on the top of the semidry brick of a concrete mixture and allowing the laws of gravity and capillary attraction to do the work of carrying it into the face of the product; whereas former methods, in so far as brick are concerned, had been to force the mixture in by external or machine force. Plaintiff's method permits the prompt and rapid removal of the bricks from the containers, and a further, though not conclusive, evidence of the utility of the process is the extent to which it has been used in the trade.

■ As to the defense that it violates the anti-trust laws, suffice it to say that there is no such stipulation in the agreement of the parties, and, in the absence thereof, the court will assume that the intention was to convey the rights with only such restrictions as were lawfully permitted under the patents.

There should be judgment for the plaintiff for the amount sued for and recognizing defendant as entitled to the exclusive use of said patents within the remainder of the state of Louisiana, other than the parish of Caddo. Decree may be presented.

## On Rehearing.

■ Since the decision of this case upon the merits defendants have filed a motion for rehearing, based upon the contention that plaintiff is no longer the owner of the patent or the claims sued upon herein. In addition, counsel for plaintiff have filed an intervention claiming an interest in the judgment as compensation for their services. I do not feel that these matters can be properly disposed of on the application for rehearing without reopening the case. It is, of course, essential that the court should have before it proper parties, and the defendant is entitled to know when it pays the amount of the judgment that this will be a discharge as against all persons having a right thereto. Then, too, the claim for attorney's fees raises an issue which should also be determined after a hearing upon its merits.

Said case will therefore be reopened for the limited purposes of determining who is now the lawful owner of the claim against defendant and whether or not counsel for plaintiffs will or can be recognized as owners of an interest in the judgment.